UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JESSE MUFF, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| IRON WORKERS' MID-AMERICA, | ) |
| PENSION AND SUPPLEMENTAL | )   16 C 655 |
| MONTHLY ANNUITY FUND, | ) |
| | ) |
| Defendants, | ) |
| _____ | ) |
| | ) |
| DEBORAH SALVATORE, | ) |
| | ) |
| Intervenor-Defendant. | ) |

## MEMORANDUM OPINION

**CHARLES P. KOCORAS, District Judge:**

Before the Court are the parties' cross-motions for summary judgment pursuant to Federal Rule of Civil Procedure 56 ("Rule 56"). For the following reasons, Plaintiff Jesse Muff's ("Muff") motion for summary judgment [22] is denied; Defendants Iron Workers' Mid-America Pension Fund's (the "Pension Fund") and Supplemental Monthly Annuity Fund's (the "SMA Fund") (collectively, "Defendants") motion for summary judgment [20] is denied; and Defendant-Intervenor Deborah Salvatore's ("Salvatore") motion for summary judgment [16] is denied.

## BACKGROUND

The following facts are taken from the parties' statements and exhibits filed pursuant to Northern District of Illinois Local Rule 56.1 ("Local Rule 56.1 statement"). Salvatore did not file a separate Local Rule 56.1 statement; nor did she file an answer to Muff's 56.1(a)(3) statement of undisputed material facts. Yet, in her motion for summary judgment, she included a section labeled "Facts Not In Dispute," which contains a list of nine numbered facts with citations to the record. The Court assumes that this section was intended to serve as Salvatore's Local Rule 56.1 statement. The Court disregards any argument, conclusion, or assertion unsupported by the evidence in the record. The parties do not dispute the facts stated below unless otherwise noted.

Randall Kitchens ("Kitchens"), Muff's uncle, "was a member of the International Association of Bridge, Structural, Ornamental and Reinforcing Iron Workers' Union Local 63" ("Iron Workers' Union Local 63"). Defendants "are multi-employer pension plans that offer retirement plans to employees who perform work for employers who are signed to collective bargaining agreements with Iron Workers' [Union] Local 63." Both of these benefit plans are governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq*. Kitchens participated in the Pension Fund and the SMA Fund (collectively, "the Funds") until his death on February 2, 2015. At the time of his death, Kitchens' designated beneficiary of his Pension Fund was entitled to "a total of $889.50 per

month up to $33,007.60" and the designated beneficiary of his SMA Fund was entitled to "a lump sum death benefit" of approximately $6,220.98.

In 1978, Kitchens met Salvatore. They were "romantically involved" for about a year. Many years later, in 2009, Kitchens and Salvatore rekindled their relationship. Subsequently, on or around April 28, 2011, Kitchens named Salvatore "his designated beneficiary for all benefits allowable through his membership in the" Iron Workers' Union Local 63. While this relationship lasted longer than the first, the couple eventually parted ways. On January 6, 2012, Kitchens replaced Salvatore, the named beneficiary of his Iron Workers' Union Local 63 death benefit, with Muff. He did so by completing a white card that he obtained from the local union hall and personally handing it to a representative there. "At the same time [that] an Iron Worker requests the white change of beneficiary card," two additional cards, one blue and one yellow, "are provided to union members at the union hall allowing beneficiary changes to different accounts." However, "[u]nlike the white card, the blue and yellow cards must be mailed directly to" the Funds. Although Kitchens completed the white card on January 6, 2012, he did not complete the blue and yellow cards on the same day. The designated beneficiary of Kitchens' death benefit from the Iron Workers' Union Local 63 is not presently at issue; but, the parties dispute whether Salvatore is entitled to Kitchens' benefits from the Funds.

On September 12, 2014, Kitchens remembered that he had not completed the blue and yellow cards, which would have removed Salvatore as the beneficiary on his

3

pension benefits. Thus, Kitchens went to the union hall, obtained the blue and yellow cards, and took them home to complete them. The parties dispute whether the act of going to the union hall and obtaining the blue and yellow cards demonstrates that Kitchens intended to remove Salvatore as the designated beneficiary of his benefits.

Ami Cutrone ("Cutrone"), Muff's former girlfriend, claims that she observed Kitchens complete the blue and yellow cards. The parties dispute whether "[t]he following day, Kitchens told Cutorne via telephone that he was headed to the post office to mail the completed blue and yellow cards." However, the parties agree that later on that same day, "Kitchens texted Cutrone and said that he '[f]inally got that bitch out of [his] money,' by which Cutrone understood that Kitchens mailed the completed blue and yellow cards." No evidence has been presented "that Kitchens was ever informed of any issue related to the change of beneficiary for" his Pension Fund benefits or his SMA Fund benefits.

Following Kitchens' death, on April 17, 2015, James Neuman ("Neuman"), the attorney for the Funds, informed Muff and Salvatore that Salvatore was the designated beneficiary to Kitchens' death benefits. Subsequently, Muff appealed "the decision that Salvatore was the beneficiary of Kitchens' death benefits." Prior to the appeal hearing before the Appeals Review Committee of the Iron Workers' Mid-America Pension and Supplemental Monthly Annuity Fund ("Appeals Committee")[1], Muff's

---

[1] The parties interchangeably use the terms "Committee," "Trustees," "Board of Trustees," and "administrator" in reference to the Appeals Review Committee of the Iron Workers' Mid-America Pension and Supplemental Monthly Annuity Fund. For purposes of clarity, we refer to

4

attorney submitted a "Brief in Support of Jesse Muff" articulating his position that Kitchens intended to remove Salvatore as the designated beneficiary to his Pension Fund benefits and SMA Fund benefits.

The Appeals Committee issued an opinion, which the Board of Trustees (the "Trustees") approved, affirming the Administrator's designation of Salvatore as the recipient of Kitchens' death benefits. Consequently, on January 15, 2016, Muff filed the instant action against the Funds "seeking a declaratory judgment declaring him the designated beneficiary" of Kitchens' Pension Fund benefits and SMA Fund benefits. The Court then granted Salvatore's motion to intervene as a necessary party. Now before the Court are the parties' cross-motions for summary judgment.

## LEGAL STANDARD AND STANDARD OF REVIEW

Summary judgment is appropriate when the movant establishes that "there is no genuine dispute as to any material fact and [that] the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact arises where a reasonable jury could find in favor of the non-movant based on the evidence of record. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "As with any motion for summary judgment, a court considering cross-motions for summary judgment will 'constru[e] all facts, and draw[ ] all reasonable inferences from those facts in favor of the nonmoving party.'" *Metropolitan Life Ins. Co. v. Unger*, No. 14

---

the Appeals Review Committee of the Iron Workers' Mid-America Pension and Supplemental Monthly Annuity Fund, and the Board of Trustees who approved their decision, as the Appeals Committee.

CV 07586, 2016 WL 5477523, at * 4 (N.D. Ill. Sept. 29, 2016) (quoting *Garofalo v. Vill. of Hazel Crest*, 754 F.3d 428, 430 (7th Cir. 2014)).

First, we must address the proper standard under which the Court will review the Appeals Committee's determination to affirm the Administrator's decision designating Salvatore as the recipient of Kitchens' death benefits. "Under ERISA, the default standard of review is *de novo*, unless the governing plan expressly gives the administrator the discretion to determine eligibility and to interpret the terms of the contract." *Mirocha v. Metro. Life Ins. Co.*, 56 F. Supp. 3d 925, 931 (N.D. Ill. 2014); *see also Tegtmeier v. Midwest Operating Engineers Pension Trust Fund*, 390 F.3d 1040, 1045 (7th Cir. 2004). The plan documents that govern the SMA Fund state, "[a]ll questions or controversies . . . shall be submitted to the Trustees for decision . . . . The decision on review shall be binding . . . except to the extent that such decision may be determined to be arbitrary or capricious by a court." Similarly, according to the plan documents governing the Pension Fund, "[t]he Trustees shall . . . be the sole judges of the standard of proof required in any case and the application and interpretation of this Plan; and decisions of the Trustees shall be final and binding." Accordingly, because the Plans give discretion we apply the arbitrary and capricious standard in reviewing the Appeals Committee's decision.

Applying this standard, a court defers to the plan administrator's determination. *See Hackett v. Xerox Corp. Long-Term Disability Income Plan*, 315 F.3d 771, 776 (7th Cir. 2003). "The reviewing court may not overturn the administrator's decision if

it 'makes a rational connection between the issues to be decided, the evidence in the case, the text under consideration, and the conclusion reached.'" *Jackman Fin. Corp. v. Humana Ins. Co.*, No. 08 C 5784, 2010 WL 1178067, at *3 (N.D. Ill. Mar. 22, 2010) (quoting *Exbom v. Cent. States Se. & Sw. Areas Health & Welfare Fund*, 900 F.2d 1138, 1143 (7th Cir. 1990)). However, "[r]eview under the deferential arbitrary and capricious standard is not a rubber stamp and deference need not be abject." *Hackett*, 315 F.3d at 774–75. "A court considers whether there was a reasonable basis for the administrator's determination; a court will not uphold the administrator's decision 'when there is an absence of reasoning in the record to support it.'" *Mirocha*, 56 F. Supp. 3d at 932 (quoting *Holmstrom v. Metro. Life Ins. Co.*, 615 F.3d 758, 766 (7th Cir. 2010)). Moreover, ERISA mandates that "specific reasons for denial be communicated to the claimant and that the claimant be afforded an opportunity for full and fair review by the administrator." *Id.* (quoting *Tate v. Long Term Disability Plan for Salaried Emps. of Champion Int'l Corp. No. 506*, 545 F.3d 555, 559 (7th Cir. 2008)). Finally, "[w]hen considering a claim under the arbitrary and capricious standard, the court may refer only to that evidence which was before the decision maker at the time of the decision at issue." *Jacobs v. Xerox Corp. Long Term Disability Income Plan*, 356 F. Supp. 2d 877, 885 (N.D. Ill. 2005).

## DISCUSSION

Muff argues that the Court should grant his motion for summary judgment because: (i) Kitchens substantially complied with the Funds' change of beneficiary

requirements; and (ii) Muff presented sufficient evidence that Kitchens mailed the blue and yellow change of beneficiary forms to invoke the presumption of receipt rule pursuant to the federal common law mailbox rule.  In response, Salvatore asserts that there is no evidence that Kitchens substantially complied with the change of beneficiary requirements, nor is there evidence that the mailbox rule should be applied.  Additionally, the Funds argue that the Appeals Committee's decision was not arbitrary and capricious because: (i) "[t]here is no evidence in the administrative record that prior to his death, Kitchens intended to change the beneficiary designation forms;" and (ii) the evidence Muff presented to show that Kitchens mailed the blue and yellow cards is insufficient to invoke the mailbox rule.  Thus, according to the Funds, the "decision that Salvatore is the proper beneficiary under the plan and the law was reasonable."

At this point in the litigation, we are not to determine whether Kitchens substantially complied with the change of beneficiary requirements or whether Muff presented sufficient evidence that Kitchens mailed the blue and yellow change of beneficiary forms to invoke the presumption of receipt rule.  Rather, as the parties agree, the Court is to review the Appeals Committee's decision, which was adopted by the Trustees, applying the arbitrary and capricious standard.

**I.     Review Of Appeals Committee's Decision**

On April 17, 2015, Neuman sent a letter to Muff and Salvatore explaining that:

> By 'Beneficiary Designation Form(s)' dated April 18, 2011, Mr. Kitchens named Deborah A. Salvatore, his 'friend,' as his beneficiary. . . . No additional Beneficiary Designation Forms were submitted. Since Mr. Kitchens was not married at the time of his death, the death benefits are payable in accordance with the Plan's provisions to his designated beneficiary, Ms. Salvatore.

The letter also included the relevant provisions of the Pension Plan and the SMA Plan, as well as an explanation of why these provisions control the disbursement of benefits. Subsequently, Muff's attorney requested "the right to appeal the decision that Salvatore was the proper beneficiary." Prior to the appeal hearing, Muff's attorney filed a "Brief in Support of Jess Muff." The Appeals Committee heard the appeal on July 15, 2015, and issued its decision on September 22, 2015. The Appeals Committee's five-page decision affirmed the Administrator's designation of Salvatore as the recipient of Kitchens' death benefits.

The decision stated that "[p]ersonal appearances were made by Jesse Muff and his attorney Matthew E. Vogler, and by Deborah Salvatore and her attorney Scott C. Ceal" and that "[t]he Committee reviewed the report of the Administrator, Joseph J. Burke, and the Administrative Office file documentation, the oral presentations of the Claimants, their attorneys and witnesses, and additional submitted documentation." The Appeals Committee's decision also included the relevant sections of the Pension Plan and the SMA Plan. Upon reviewing this information, in a section labeled "Decision And Reasons For Decision" the Appeals Committee stated, in full, that:

> Death Benefits are paid in accordance with the Plans' provisions. The Pension and SMA Plans provide that Death Benefits are paid

> in accordance with the Designated Beneficiary on file. The Designated Beneficiary on file is Deborah Salvatore. Accordingly, the Administrator correctly interpreted the Plans' provisions and Fund Counsel's April 17, 2015 correspondence accurately explained to the Claimants the Plans' provisions.

The Trustees adopted the decision, making it binding.

Salvatore's motion for summary judgment asserts that "[b]ased upon the Plan and the pertinent sections of the Plan . . . the Trustees finding is proper in this case," and the written record shows that their decision was not arbitrary and capricious. According to Salvatore, in reviewing the evidence submitted, the Appeals Committee found that Kitchens "did not take the proper steps to change his beneficiaries pursuant to the written Plan provisions," and that the mailbox rule is not applicable to this case as there is "no evidence" that Kitchens "mailed the proper forms to the Plan." Moreover, she contends that there is "no evidence" that this "rule was abided by nor was applied in this case to show compliance with the rules of the Plan."

Similarly, the Funds assert in their motion for summary judgment that the Appeals Committee did not act in a manner that was arbitrary and capricious in affirming the Pension Fund's and the SMA Fund's determination that Salvatore was the designated beneficiary of Kitchens' death benefits. Rather, the Funds contend, that in following the provisions of ERISA and other federal law, the Appeals Committee acted in accordance with the language of the Pension Plan and the SMA Plan. This language states that benefits are payable to the designated beneficiary on

file, and that the Pension Fund and the SMA Fund are required to pay the benefits to the designated beneficiary. Here, that was Salvatore.

In response to Salvatore's and the Funds' motions for summary judgment, Muff asserts that the Appeals Committee was arbitrary and capricious in failing to "address any of the arguments and/or evidence raised by" Muff, including that Kitchens "substantially complied, as defined by federal law," with the Iron Workers' Union 63 change of beneficiary requirements, and that "sufficient evidence has been presented to invoke a presumption of receipt." According to Muff, the Appeals Committee's rationale in its Opinion demonstrates that it "refused to engage in anything beyond the simplest of analyses whereby it relied solely upon the designated beneficiary on file, at the exclusion of any and all other arguments."

Both the Funds and Muff rely on *Kuchar v. AT&T Pension Benefit Plan-Midwest Program*, No. 06 C 0059, 2007 WL 838985 (N.D. Ill. Mar. 13, 2007) in support of their respective arguments. In that case, the plaintiff, Louis Kuchar ("Kuchar"), participated in a number of employee benefit pension plans. *Id*. at *1. Before Kuchar left AT&T, he completed an election form to receive a lump sum payment of his pension benefits. *Id.* at *2. When he attempted to confirm receipt of his election form, Kuchar was told that the form had not been received and that "his lump-sum distribution election period had expired." *Id*. Consequently, "his request for a lump-sum distribution of his pension benefits" was denied. *Id*. at *3.

Subsequently, "Kuchar's attorney appealed the denial of his request for a lump-sum distribution . . . argu[ing], among other things, that the Plan had to presume timely receipt of Kuchar's August 5, 2005 Election Form since the Plan" did not identify "evidence rebutting his claim that he properly mailed the Election Form." *Id*. Thereafter, Kuchar's attorney sent a supplemental letter, again, making the same argument. *Id*. The Benefit Plan Committee denied Kuchar's appeal. *Id*. Kuchar then filed suit against AT&T Pension Benefit Plan-Midwest Program and AT&T, Inc., as the Plan Administrator, pursuant to ERISA "alleging that the Plan wrongfully denied him a lump-sum disbursement of his retirement benefits." *Id*. at *1.

The court in *Kuchar* stated that although Kuchar argued before the Benefit Plan Committee that the presumption of receipt rule applies to ERISA, and that the letters he submitted "appealing the decision denying his request for a lump-sum distribution" contained this argument, the Benefit Plan Committee "failed to consider it." *Id*. at *5. In its defense, the Plan asserted that "even if it is assumed that the presumption-of-receipt rule applies to ERISA, it would not apply in this case because Kuchar has presented insufficient evidence of a proper mailing to create a presumption of receipt." *Id.* Thus, the Plan argued, "the Committee's failure to consider Kuchar's argument was not an abuse of discretion." *Id*. Salvatore makes a similar argument in her motion for summary judgment asserting that "[t]here is no evidence [that] any Designated Beneficiary Forms were sent by [ ] Kitchens in the fall of 2014."

In the instant matter, the "Decision and Reasons for Decision" affirms the Administrator and includes the following justification: (i) death benefits are to be paid in accordance with the Plans' provisions; (ii) the Plans' provisions provide that death benefits are paid in accordance with the designated beneficiary on file; and (iii) the designated beneficiary on file is Salvatore. There is no explanation regarding the evidence that the Appeals Committee reviewed or the weight that it gave to the evidence presented. *See Hackett*, 315 F.3d at 775. ("Conclusions without explanation do not provide the requisite reasoning and do not allow for effective review.") Nor does the decision address any of the evidence that Muff presented to support his arguments that Kitchens substantially complied with the Pension Plan and SMA Plan requirements to change his designated beneficiary. "Since there is no evidence that the [Appeals] Committee even entertained [Muff's] argument[s], there is no decision of the [Appeals] Committee on this issue to which the court owes deference." *See Kuchar*, 2007 WL 838985, \*6. The decision likewise fails to mention the evidence that Kitchens purportedly mailed the blue and yellow cards in an attempt to change his designated beneficiary on his Pension Fund and SMA Fund. The Appeals Committee's apparent failure to consider these arguments is unreasonable. *See id*.

The Funds assert in their motion for summary judgment that "ERISA and federal law require the Trustees to act in accordance with the plan . . . If the plan says, as it does in this case, that benefits are payable to the designated beneficiary" on file, "then the plan is required to pay those benefits to the designated beneficiary."

13

Moreover, the Funds contend that "[t]he Trustees are not required to look outside of the documents on file in order to determine whether the designated beneficiary on file was one that the participant intended for the benefits to be paid." In support of this argument the Funds rely on *Kennedy v. Plan Adm'r for DuPont Sav. & Inv. Plan*, 555 U.S. 285, 304 (2009). Conversely, Muff relies on *Kennedy* to support his argument that, in certain instances, "a plan administrator must look for beneficiaries outside plan documents notwithstanding § 1104(a)(1)(D)." (emphasis omitted). Moreover, Muff asserts that he "is not asking, nor has [he] ever asked, Defendant to make an inquiry into" Kitchens' subjective intent. Rather, Muff claims that he "has presented objective evidence of Kitchens' intent which tends to show that Kitchens undertook positive action to effectuate" his intent and that his actions were "similar to the action required to designate or change a beneficiary under the plan documents."

Here, the Appeals Committee's decision failed to respond to Muff's arguments, which were part of the "documents on file." While there were additional exhibits attached to Muff's brief, there were arguments within the brief that the Appeals Committee's decision did not address. Moreover, the Appeals Committee did not provide reasons for rejecting the evidence that Muff presented in support of his arguments. *Hackett*, 315 F.3d at 775 (quoting *Halpin v. W.W. Grainger, Inc.*, 962 F.2d 685, 695 (7th Cir. 1992)) ("[T]he administrator must weigh the evidence for and against [the denial or termination of benefits], and within reasonable limits, the reasons for rejecting evidence must be articulated if there is to be meaningful

appellate review."). Here, the Appeals Committee's decision did not provide Muff with "a statement of reasons that allowe[d] a clear and precise understanding of the grounds for" its position. *See Kuchar*, 2007 WL 838985, *6 (quoting *Hackett*, 315 F.3d at 775). Thus, the Court cannot evaluate the reasonableness of the Appeals Committee's decision to affirm the Administrator, and for that reason, its decision is deemed arbitrary and capricious.

## II. Remedy

"When a plan administrator does not give adequate reasoning for its decision, we normally remand the case so that the administrator can make further findings or provide additional explanation." *Schane v. Int'l Bhd. of Teamsters Union Local No. 710 Pension Fund Pension Plan*, 760 F.3d 585, 592 (7th Cir. 2014). Although Muff requested that this Court name him beneficiary of Kitchens' Pension and SMA benefits, the appropriate remedy is to remand Muff's claim for reconsideration.

## CONCLUSION

For the aforementioned reasons, Muff's motion for summary judgment is denied; the Funds' motion for summary judgment is denied; and Salvatore's motion for summary judgment is denied. Muff's claims are remanded for reconsideration.

_____
Charles P. Kocoras
United States District Judge

Dated: 11/25/2016

15