# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| JESSE MUFF, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 16 C 655 |
| | ) | |
| IRON WORKERS' MID-AMERICA PENSION AND SUPPLEMENTAL MONTHLY ANNUITY FUND, | ) ) ) | |
| | ) | |
| Defendants, | ) | |
| _____ | ) | |
| | ) | |
| DEBORAH SALVATORE, | ) | |
| | ) | |
| Intervenor-Defendant. | ) | |

## MEMORANDUM OPINION

**CHARLES P. KOCORAS, District Judge:**

Before the Court is Intervenor Deborah Salvatore's ("Salvatore") motion to affirm the findings of the Appeals Review Committee of the Iron Workers' Mid-America Pension and Supplemental Monthly Annuity Funds. For the following reasons, Salvatore's motion is granted.

## BACKGROUND

Randall Kitchens ("Kitchens") was a member of the Iron Workers' Union Local 63 ("IWU"). Defendants Iron Workers' Mid-America Pension Fund (the "Pension Fund") and Supplemental Monthly Annuity Fund (the "SMA Fund")

(collectively, the "Funds") are pension plans that offer retirement plans to employees of employers who are signed to collective bargaining agreements with IWU. Both plans are governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, *et seq*. Kitchens participated in the Funds and, at the time of his death, Kitchens' designated beneficiary of his Pension Fund was entitled to "a total of $889.50 per month up to $33,007.60" and the designated beneficiary of his SMA Fund was entitled to "a lump sum death benefit" of approximately $6,220.98. Plaintiff Jesse Muff ("Muff") is Kitchens' nephew. Muff believes that he, not Salvatore, is the proper beneficiary entitled to Kitchens' benefits under the Funds.

Kitchens met Salvatore in 1978 and the two briefly dated. Many years later, in 2009, Kitchens and Salvatore rekindled their relationship. On or about September 28, 2011, Kitchens named Salvatore as his designated beneficiary for all benefits allowable through his membership in the IWU. Several months later, however, on January 6, 2012, Kitchens visited the union hall to replace Salvatore as his designated beneficiary with Muff.

To successfully change the beneficiary for all his benefits, Kitchens had to complete and submit three different-colored cards. The white card, which can be submitted at the union hall, designates the beneficiary of the local international union death benefit. The two remaining cards, blue and yellow, designate the beneficiary of the Pension Fund and the SMA Fund death benefits, and must be sent by mail to a separate entity affiliated with the IWU. Kitchens successfully completed and

2

submitted the white card naming Muff as his beneficiary of the union death benefit on January 6, 2012. He did not complete the blue and yellow cards at that time.

Two years later, as Kitchens was preparing for an upcoming back surgery, he remembered that he had not completed the blue and yellow cards to remove Salvatore as the beneficiary on his pension benefits through the Funds. According to Ami Cutrone ("Cutrone"), Muff's former girlfriend, Kitchens obtained the blue and yellow cards and filled them out while she was present. Muff alleges that Kitchens asked Muff to confirm his social security number while completing the cards. Cutrone claims that Kitchens told her the next day that he was headed to the post office to mail the completed cards. Later that night, Kitchens texted Cutrone and said that he "[f]inally got that bitch out of [his] money," by which Cutrone understood that Kitchens mailed the completed blue and yellow cards. Also around that time, Kitchens changed his beneficiary on a separate annuity held by Midland National Life Insurance Company ("Midland") from Salvatore to Muff.

After Kitchens' death, an attorney representing the Funds informed Muff and Salvatore that Salvatore was the designated beneficiary to Kitchens' death benefits under the Funds. Muff appealed that decision, and a hearing was held before the Appeals Review Committee of the Iron Workers' Mid-America Pension and

Supplemental Monthly Annuity Fund ("Appeals Committee")[1]. The Appeals Committee affirmed the designation of Salvatore as the recipient of Kitchens' death benefits. Muff subsequently filed the instant action requesting the Court to declare him the designated beneficiary of Kitchens' benefits under the Funds, to which Salvatore intervened as a necessary party.

Muff, the Funds, and Salvatore each moved for summary judgment, which we denied on November 28, 2016. We found that the Appeals Committee's decision was arbitrary and capricious because it (1) provided no explanation regarding the evidence it reviewed and how it weighed that evidence, and (2) unreasonably failed to consider Muff's arguments and evidence regarding Kitchens' purported mailing of the change in beneficiary cards. We remanded the case so that the Appeals Committee could make further findings and provide additional explanation.

On April 12, 2017, the Appeals Committee held a hearing after receiving briefs by both Salvatore and Muff and tendered a decision in favor of Salvatore on May 3, 2017 ("May Decision"). Muff appealed again. After the appellate review hearing, the Appeals Committee again found in favor of Salvatore on August 30, 2017 ("August Decision"). Salvatore then brought the instant motion, requesting the Court to affirm the Appeals Committee's decision.

---

[1] The parties interchangeably use the terms "Committee," "Trustees," "Board of Trustees," and "Administrator" in reference to the Appeals Review Committee of the Iron Workers' Mid-America Pension and Supplemental Monthly Annuity Fund. For purposes of clarity, we refer to the Appeals Review Committee of the Iron Workers' Mid-America Pension and Supplemental Monthly Annuity Fund, and the Board of Trustees who approved their decision, as the Appeals Committee.

## **LEGAL STANDARD**

As previously discussed in our summary judgment order, we review the Appeals Committee's decision under the "arbitrary and capricious" standard. Under this standard, we will overturn the decision only if it is "downright unreasonable." *Mote v. Aetna Life Ins. Co.*, 502 F.3d 601, 606 (7th Cir. 2007). In other words, the Appeals Committee's decision "should not be overturned as long as (1) 'it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome,' (2) the decision 'is based on a reasonable explanation of relevant plan documents,' or (3) the [Appeals Committee] 'has based its decision on a consideration of the relevant factors that encompass the important aspects of the problem.'" *Hess v. Hartford Life & Acc. Ins. Co.*, 274 F.3d 456, 461 (7th Cir. 2001) (citing *Exbom v. Cent. States, Se. & Sw. Areas Health & Welfare Fund*, 900 F.2d 1138, 1142–43 (7th Cir. 1990)).

Review under the arbitrary and capricious standard is "not a rubber stamp," however, and we will not uphold a decision "when there is an absence of reasoning in the record to support it." *Holmstrom v. Metro. Life Ins. Co.*, 615 F.3d 758, 766 (7th Cir. 2010) (quoting *Hackett v. Xerox Corp. Long-Term Disability Income Plan*, 315 F.3d 771, 774–75 (7th Cir. 2003)). The Court must consider only the evidence that was before the Appeals Committee when it made its decision. *Hess*, 274 F.3d at 462. Moreover, "specific reasons for denial [must] be communicated" and the claimant must be "afforded an opportunity for full and fair review by the [Appeals

Committee]." *Mirocha v. Metro. Life Ins. Co.*, 56 F. Supp. 3d 925, 932 (N.D. Ill. 2014).

Importantly, "it is not our function to decide whether we would reach the same conclusion as the [Appeals Committee] or even rely on the same authority." *Carr v. Gates Health Care Plan*, 195 F.3d 292, 294 (7th Cir. 1999). We are not to analyze the parties' arguments, but whether the Appeals Committee's determination was reasonable. *See Cvelbar v. CBI Ill. Inc.*, 106 F.3d 1368, 1379 (7th Cir. 1997), *abrogated on other grounds by Int'l Union of Operating Eng'rs, Local 150, AFL-CIO v. Rabine*, 161 F.3d 247 (7th Cir. 1998). If the Appeals Committee "made an informed judgment and articulate[d] an explanation for it that [was] satisfactory in light of the relevant facts, then that decision is final." *Tegtmeier v. Midwest Operating Eng'rs Pension Trust Fund*, 390 F.3d 1040, 1045 (7th Cir. 2004).

## DISCUSSION

Salvatore asserts that, based on the sufficient findings of the Appeals Committee, she has proven her case that she is entitled to the benefits under the Funds. Muff vehemently denies the Appeals Committee's finding and argues that the Appeals Committee again failed to consider his arguments. Muff's position lies on two separate legal theories that Muff believes, in conjunction, entitle him to Kitchens' death benefits: (1) substantial compliance, and (2) the "mailbox rule." Muff argued in his briefing both in front of the Appeals Committee and before this Court that (1) Kitchens substantially complied with the Funds' process for changing

6

beneficiaries and demonstrated a "clear and unequivocal intent" that should be effectuated, and (2) Muff presented sufficient evidence to invoke the presumption of receipt under the common law mailbox rule by providing evidence that Kitchens mailed out his change in beneficiary cards. Muff's overarching argument against Salvatore's motion is that the Appeals Committee failed to adequately consider Muff's evidence and arguments, misapplied the mailbox rule, and drew no rational connection between the evidence and its decision.

The Appeals Committee found that Kitchens did not substantially comply with the Funds' process for changing beneficiaries. In its May Decision, the Appeals Committee noted that Muff attempted to invoke the mailbox rule to support his claim that Kitchens substantially complied with the Funds' rules.[2] It decided, however, that Cutrone's deposition testimony regarding Kitchens' purported mailing of the beneficiary cards was not sufficient because (1) she did not personally mail the cards (and all relevant case law involves sworn deposition testimony of the person who mailed the materials), and (2) she did not personally observe Kitchens mailing the cards.

In its "Decision and Reasons for Decision" section, the Appeals Committee explained its reasoning as follows:

---

[2] In his brief, Muff notes that the May Decision failed to address his substantial compliance argument in its totality and "does not even contain the phrase 'substantial compliance.'" While Muff is technically correct that the specific phrase was not used, the Appeals Committee clearly acknowledged Muff's argument: "Mr. Muff invokes the Mail Box Rule in support of his claim that Mr. Kitchens *substantially complied* with the Plan's rules for changing the beneficiary designation." May Decision ¶ 14 (emphasis added).

7

> The Funds have no evidence directly from Randall Kitchens that he wanted to change the Designated Beneficiary on file. There are only statements from those who believe that Randall Kitchens was going to mail the new beneficiary cards. Those persons, however, did not witness Mr. Kitchens place the envelope in the mail, nor did they put the cards in the mail. The Funds have only one set of beneficiary cards on file and those cards indicate that Deborah Salvatore is the Designated Beneficiary. Accordingly, the Administrator has interpreted the Plans' provisions in accordance with the documents that are on file and the additional evidence from Jesse Muff.

After the Appeals Committee's May Decision, Muff appealed again and submitted a supplemental brief asserting that the May Decision (1) misapplied the mailbox rule, (2) ignored case law regarding the substantial compliance doctrine, and (3) ignored direct statements made by Kitchens via text message. Muff cited to *Phoenix Mut. Life Ins. Co. v. Adams*, a Fourth Circuit case that applied the doctrine of substantial compliance in the absence of direct testimony or evidence from the decedent, relying solely upon third-party testimony of the decedent's intent. 30 F.3d 554 (4th Cir. 1994). He argued that Kitchens took steps to effectuate his intent to change his beneficiary, including changing the beneficiary on his Midland insurance policy, picking up and filling out the blue and yellow cards, mailing them, and "later confirming their mailing via text message to Cutrone." Lastly, he argued that the Appeals Committee ignored Kitchens' text message, which supposedly referred to removing Salvatore from his benefits.

The issue presented on appeal was: "Has there been additional facts and/or a change in the law that would warrant the Funds' reversing their [May Decision]?" In

its August Decision, the Appeals Committee noted that Muff raised the same two arguments regarding substantial compliance and the mailbox rule, yet there were no new facts presented at the rehearing in support of those arguments. Accordingly, the Appeals Committee affirmed the May Decision.

The Appeals Committee explained its reasoning again, providing additional explanation in response to the arguments Muff raised in his supplemental brief. With respect to the mailbox rule, the Appeals Committee explained:

> There is no direct evidence that Randall Kitchens mailed the change in the beneficiary cards. The Funds possess no evidence that Randall called the Fund Office to indicate that he wanted to change the beneficiary on file; there are no writings in the Fund Office that Randall Kitchens intended to change the beneficiary on file. Ms. Cutrone, as stated in the pleadings, did not witness Mr. Kitchens mailing the change in beneficiary cards. She and Mr. Muff presumed, based on some text messages from Mr. Kitchens, that in fact the cards had been mailed – even though the text messages do not directly say the cards were mailed.

The Appeals Committee found that there was insufficient evidence to support the presumption of receipt under the mailbox rule.

In his brief before this Court, Muff contends that the Appeals Committee applied the incorrect standard for the mailbox rule by requiring direct evidence from Kitchens regarding the mailing. Muff asserts that sworn testimony from a third party is sufficient to raise a presumption of receipt. He further argues that the text messages between Kitchens and Cutrone constitute "direct evidence from Kitchens himself."

These arguments, however, have no place in the instant motion. We are not to determine whether the Appeals Committee was correct or whether we would rule the

same way, but rather whether the Appeals Committee's decision was reasonable. *See Cvelbar*, 106 F.3d at 1379 (citing to *Brown v. Rauscher Pierce Refsnes, Inc.*, 994 F.2d 775, 781 (11th Cir. 1993) ("For an [arbitration] award to be vacated as arbitrary and capricious, the Panel's award must contain more than an error of law or interpretation.")). The Appeals Committee's decision, despite being contrary to Muff's wishes, was reasonable based on the evidence before it. This is not a straight-forward case; a factfinder could have reasonably decided either way. Under the arbitrary and capricious standard, however, we must defer to the Appeals Committee's decision in this case, which was reasonable in that the Appeals Committee acknowledged and discussed Muff's arguments and evidence regarding the mailbox rule. The Appeals Committee explained that there was no direct evidence that Kitchens mailed the cards and rejected the idea that the text messages between Kitchens and Cutrone proved that he mailed them, as "the text messages do not directly say the cards were mailed." Just because the Appeals Committee did not weigh certain evidence as strongly as Muff would have liked does not render its decision unreasonable.

Because the Appeals Committee rejected the mailbox rule argument, it logically follows that it found that Kitchens had not substantially complied with the Funds' process for changing beneficiaries. The Appeals Committee stated:

> There was no substantial compliance with the Funds' rules. Mr. Kitchens did not actually physically go to the Fund Office and execute a form to change the beneficiary designation. Nor did he follow-up with

> the Fund Office to confirm that a beneficiary had been changed. The only evidence the Fund Office has are the cards that are currently on file. There is no other written evidence from Mr. Kitchens, at the time that he was alive, to indicate that he intended to change the beneficiary from Deborah Salvatore to Jesse Muff.

Muff argues that Kitchens was not required to perform any of the acts listed by the Appeals Committee. He states that the Funds' rules for changing beneficiaries did not require Kitchens to physically visit the Fund Office or follow-up with the Funds to confirm the change. We read the Appeals Committee's explanation, however, not as requiring Kitchens to perform these acts, but as comparing the evidence before it with the evidence in *Phoenix*, the case that Muff cited as support.

As Muff stated in his supplemental brief before the Appeals Committee, the decedent in *Phoenix* physically went to his employer's home office to execute the form that would change his beneficiary, but he failed to write the name of the new beneficiary. 30 F.3d at 557. Muff wrote, "About two weeks later, the decedent contacted his provider to confirm his beneficiary had been changed, when, to his surprise, he was told it had not." *See id.* The decedent then asked his provider to change the beneficiary, and the employee with which the decedent spoke wrote a note reminding himself to make this change. That employee quit his job shortly thereafter and did not make the change. *Id.* After the decedent's death, the employee looked through his personal belongings and found the note, which the court considered as evidence of the decedent's intent. *Id.* at 558. These facts, along with others, led the

*Phoenix* court to find that the decedent substantially complied with the process to change beneficiaries.

The Appeals Committee compared the evidence in *Phoenix* with Muff's evidence and found that Kitchens had not substantially complied with the Funds' change in beneficiary process. Significantly, the Appeals Committee's conclusion that Kitchens did not substantially comply rested on its conclusion that Muff's evidence regarding the purported mailing of the change in beneficiary cards was insufficient to invoke the presumption of receipt under the common law mailbox rule. Such a conclusion is reasonable. Muff acknowledged that the two legal theories, *in conjunction*, prove his case. The Appeals Committee reasonably concluded that there was insufficient evidence to invoke the mailbox rule; it therefore follows that the Appeals Committee reasonably concluded that Kitchens did not substantially comply with the Funds' process for changing beneficiaries.

Muff also argues that the Appeals Committee did not consider three pieces of evidence that support his substantial compliance argument: (1) Kitchens changing the beneficiary of the Midland annuity from Salvatore to Muff, (2) Kitchens' cessation of his relationship with Salvatore, and (3) Kitchens asking Muff to confirm his social security number and other identifying information. We disagree that the cessation of the relationship would have any bearing on whether Kitchens substantially complied with the Funds' change in beneficiary process, especially considering that the parties disagree as to when the relationship officially ended. And while it is a little troubling

that the Appeals Committee did not mention the other two factors, we find that it reasonably based its decision on the evidence discussed in its May and August Decisions.

The Appeals Committee focused on Muff's main evidence indicative of Kitchens' substantial compliance—the purported completing and mailing of the change in beneficiary cards. That was the key factor in determining whether Kitchens substantially complied. Even Muff agrees, acknowledging that by "applying both the substantial compliance doctrine and the mailbox rule in conjunction with one another," the Appeals Committee was "provided a framework under which [it] may properly analyze the issue." The Appeals Committee certainly could have considered the change in beneficiary for the Midland policy and Kitchens' request for Muff's social security number as evidence of his intent, but it was not required to do so. Having determined that the Appeals Committee reasonably concluded that the mailbox rule did not attach, we find that its lack of discussion on these facts does not render its decision arbitrary or capricious.

It is helpful to review the definitions of the words that comprise our standard of review. "Arbitrary" is defined as "existing or coming about seemingly at random or by chance." "Capricious" means "given to sudden and unaccountable changes of mood or behavior." Understanding these terms, the Appeals Committee's May and August decisions are by no means arbitrary or capricious. Unlike its previous decision, which we deemed arbitrary and capricious because the Appeals Committee

provided no explanation for its decision and did not address any of the evidence Muff presented, its May and August Decisions certainly acknowledged Muff's evidence and offered a "statement of reasons that allowed a clear and precise understanding of the grounds for" the Appeals Committee's decision. *See Kuchar v. AT&T Pension Benefit Plan-Midwest Program*, 2007 WL 838985, at *6 (N.D. Ill. 2007). We conclude that the Appeals Committee's decision finding that Salvatore was entitled to Kitchens' benefits under the Funds was not arbitrary or capricious.

## **CONCLUSION**

For the aforementioned reasons, Salvatore's motion to affirm the findings of the Appeals Committee is granted. It is so ordered.

_____
Charles P. Kocoras
United States District Judge

Dated: 4/4/2018